UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN A. EYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1747 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Maureen A. Eyman brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

### **Procedural History**

On March 30, 2016, the Social Security Administration denied Eyman's February 2016 application for DIB, in which she claimed she became disabled on January 29, 2016, because of pacemaker dependency, mechanical heart valve, stress,

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

depression, memory loss, congestive heart failure, phantom migraines, acid reflux, and high blood pressure.[2] A hearing was held before an administrative law judge (ALJ) on January 5, 2018, at which Eyman and a vocational expert testified. On April 3, 2018, the ALJ denied Eyman's claim for benefits, finding the vocational expert's testimony to support a finding that Eyman could perform her past relevant work as an import agent and general office clerk. On September 9, 2018, the Appeals Council denied Eyman's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Eyman claims that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ improperly evaluated her treating physician's medical opinions and improperly engaged in her own medical conjecture in reviewing the evidence. Eyman also claims that the ALJ failed to include obesity-related symptoms in the residual functional capacity (RFC) assessment. Eyman asks that I reverse the ALJ's decision and remand for further proceedings.

For the reasons that follow, I will affirm the Commissioner's final decision.

## Medical Records and Other Evidence Before the ALJ

With respect to medical records and other evidence of record, I adopt Eyman's recitation of facts set forth in her Statement of Uncontroverted Material

---

[2] Eyman filed an earlier application for DIB on February 27, 2015, which the Social Security Administration denied that same date. Eyman did not pursue this application further. In the present action, Eyman does not seek to reopen her February 2015 application.

Facts (ECF 17) as admitted and clarified by the Commissioner (ECF 22-1). I also adopt the Commissioner's Statement of Additional Facts (ECF 22-2), which Eyman does not dispute. These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Eyman must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King*

*v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Id.* I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

B.    The ALJ's Decision

The ALJ found that Eyman met the requirements of the Social Security Act through December 31, 2020, and that she had not engaged in substantial gainful activity since January 29, 2016, the alleged onset date of disability. The ALJ found that Eyman's status-post aortic valve replacement with pacemaker placement,

congestive heart failure, obesity, and bilateral tinnitus with episodes of vertigo were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-19.)[3] The ALJ found that Eyman had the RFC to perform sedentary work except that she

> should never be required to climb a ladder, rope or scaffold. She should never be required to crouch or crawl. She can only occasionally climb ramps and stairs, balance, stoop and kneel. She can only occasionally operate a motor vehicle. She is limited to a working environment with only moderate noise levels. In addition, she may require use of a cane in the working environment while ambulating.

(Tr. 19.) The ALJ determined that vocational expert testimony supported a finding that with this RFC, Eyman could perform her past relevant work as a general office clerk and import agent. (Tr. 22.) The ALJ thus found that Eyman was not under a disability from January 29, 2016, through the date of the decision. (Tr. 22-23.)

C. Opinion Evidence

Dr. Alok Katyal, a cardiologist, treated Eyman's conditions of congestive heart failure, severe arterial stenosis, heart valve replacement, and hypertension for several years. He also monitored Eyman's pacemaker, which was placed in April 2013 and upon which Eyman was wholly dependent.

In a letter dated October 28, 2015, three months before Eyman's alleged onset of disability, Dr. Katyal wrote, *inter alia*,

---

[3] The ALJ also found that Eyman's migraine headaches, diabetes, and depression were non-severe. (Tr. 17-18.) Eyman does not challenge this finding.

> Because of her severe cardiac problems, she has been advised to discontinue any strenuous activity. Patient has issues with her memory, slurred speech at times and she also experiences frequent issues with numbness. From a cardiac standpoint, I strongly recommend patient to be on disability.

(Tr. 974.) In another letter dated November 28, 2017, Dr, Katyal repeated the observations made in his October 2015 letter as well as his recommendations that Eyman discontinue strenuous activity and be considered disabled. (Tr. 973.)

Dr. Katyal completed a Medical Source Statement (MSS) on December 20, 2017, in which he opined that, with respect to standing, walking, and sitting, Eyman was limited in each activity to less than two hours in an eight-hour workday. Dr. Katyal also opined that Eyman could occasionally lift less than ten pounds. He reported that Eyman was not allowed to do any type of pushing, pulling, or use of hand and foot controls. He also opined that Eyman should never climb ramps, ladders, ropes, or scaffolds and should never balance, kneel, crouch, crawl, or stoop, stating that Eyman's severe issues with dizziness and shortness of breath as well as her issues with standing, sitting, and walking long or short distances would adversely affect such activities. Dr. Katyal did not respond to the question asking whether the opined limitations were supported by any clinical or laboratory tests. (Tr. 995.)

In her written decision, the ALJ gave minimal weight to Dr. Katyal's opinions, finding them to be inconsistent with his treatment notes, other medical

evidence of record, and Eyman's own description of her activities. Eyman argues that these reasons are not supported by substantial evidence on the record and that the ALJ therefore erred in the weight given to the opinions. I disagree.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including her symptoms, diagnoses, and prognoses; what she can still do despite her impairments; and her physical and mental restrictions. 20 C.F.R. § 404.1527(a)(1) (2017).[4] The Regulations require that more weight be given to the opinions of treating sources than other sources. 20 C.F.R. § 404.1527(c)(2). A treating source's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating source has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[4] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence. For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because the claim under review here was filed before March 27, 2017, I apply the rules set out in 20 C.F.R. § 404.1527.

20 C.F.R. § 404.1527(c)(2).

When a treating source's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the source provides support for their findings, whether other evidence in the record is consistent with the source's findings, and the source's area of specialty. 20 C.F.R. § 404.1527(c). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff*, 421 F.3d at 790-91. The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ did not err in discounting Dr. Katyal's opinions. First, as noted by the ALJ, the issue of whether a claimant is unable to work or "disabled" is a matter reserved to the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ therefore did not err in discounting Dr. Katyal's opinion that Eyman should be considered "disabled."

The ALJ likewise did not err in finding that the limitations set out in Dr. Katyal's MSS were inconsistent with his own treatment notes and other evidence of record. None of Dr. Katyal's treatment notes contain any observations or findings

consistent with the extreme exertional and postural limitations contained in his December 2017 MSS.  Although Eyman complained to Dr. Katyal in 2015 that she experienced shortness of breath with activity, Dr. Katyal observed in April 2016 that Eyman was limited only in doing "vigorous activities" and was doing "all routine activities without discomfort."  (Tr. 858-62.)  In October 2016, Dr. Katyal observed that Eyman was "doing well since last evaluated" and continued to engage in routine activities without discomfort.  (Tr. 847-51.)  Dr. Katyal made these same observations in April 2017 and November 2017.  (Tr. 827-31, 968-71.)  Although Eyman complained to Dr. Katyal in October 2016 that she experienced occasional dizzy spells, the medical record shows that she began taking meclizine for the condition in November 2016 (*see* Tr. 839) and that she obtained benefit from the medication.  (*See* Tr. 689.)  Further, all physical examinations performed by Dr. Katyal yielded normal results, and Eyman denied any shortness of breath, fatigue, or weakness at her appointments with Dr. Katyal in October 2016, April 2017, and November 2017.  An ALJ does not err when she discounts a treating physician's medical opinion where the opined limitations stand alone and were never mentioned in the physician's numerous records of treatment.  *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).  *See also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (ALJ may discount treating provider's opinion when it is inconsistent with provider's own treatment notes).

Nor does other medical evidence of record support Dr. Katyal's opined limitations. Dr. Leonard Lucas, Eyman's primary care physician, conducted physical examinations in September and December 2016 (Tr. 736-39, 751-54) and in March, June, and September 2017 (Tr. 688-91, 704-07, 719-22) that yielded normal results. During her March and June 2017 appointments with Dr. Lucas, Eyman had no complaints. Although Eyman complained of occasional dizziness in December 2016 and September 2017, she reported in September 2017 that meclizine helped the condition. Notably, throughout his treatment of Eyman, Dr. Lucas never placed any restrictions on Eyman's activities.

Dr. Anthony D'Angelo, an otolaryngologist, diagnosed Eyman with vertigo in January 2017. (Tr. 979.) Upon examination and testing in January and February 2017, Dr. D'Angelo suggested that the condition was related to the central nervous system or to circulatory issues, but not the inner ear. Dr. D'Angelo's final assessment did not include vertigo as a diagnosis but included dizziness and giddiness, bilateral tinnitus, bilateral sensorineural hearing loss, and headache. He placed no restrictions on Eyman and instructed her to return for follow up as needed. (Tr. 976-78.) Eyman did not return for follow up. And, as described above, Eyman thereafter had no complaints during her March and June 2017 examinations with Dr. Lucas; reported to Dr. Lucas in September 2017 that medication helped her dizziness; and reported to Dr. Katyal in April and November 2017 that she was able

to engage in routine activities.

Because other substantial medical evidence of record does not support the extreme limitations set out in Dr. Katyal's MSS, the ALJ did not err in according minimal weight to the opinion. *See Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)). *See also Martise*, 641 F.3d at 925 ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted).

Finally, the ALJ determined to discount Dr. Katyal's opined limitations because they were inconsistent with Eyman's own account of her activities. The ALJ did not err in this determination. Eyman testified that she drives approximately ten times a month, albeit short distances (Tr. 33, 63-64); spends about two hours at a local veterans club on Friday nights to listen to karaoke (Tr. 52-53); eats out a lot (Tr. 53); watches television and engages on the internet (Tr. 51); and performs some housework, including mopping, dusting, vacuuming, and laundry (Tr. 48-49). Eyman also testified that she can walk up to 100 yards before needing to sit, and that she took a ten-day driving trip to Florida in June 2017. (Tr. 50-51.) She also reported in her Function Report that she shops for groceries and clothes in stores. (Tr. 223, 224.) These activities are inconsistent with Dr. Katyal's opinion that

Eyman could stand, sit, and walk a total of less than two hours each in an eight-hour workday and was not allowed to perform any type of pushing, pulling, or use of foot controls. These activities are also inconsistent with Dr. Katyal's statement that Eyman had "severe" issues with dizziness, standing, sitting, and walking short or long distances. An ALJ may discount a treating physician's opined limitations where they are inconsistent with a claimant's admitted activities. *Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006).

The ALJ appropriately found that Dr. Katyal's opinions as to Eyman's limitations were inconsistent with his own treatment notes and with other substantial evidence of record, including other medical evidence and Eyman's own description of her activities. The ALJ's reasons to discount Dr. Katyal's opinions constitute good reasons and are supported by substantial evidence on the record as a whole. Accordingly, the ALJ did not err in according only minimal weight to Dr. Katyal's opinions. *Goff*, 421 F.3d at 790-91.

D. Lack of Opinion Evidence

Dr. Katyal's opinions were the only medical opinion evidence of record. Eyman argues that because the ALJ discounted the only opinion evidence, the record was devoid of any evidence from which the ALJ could adequately assess her RFC, and thus that the ALJ improperly drew upon her own inferences and engaged in medical conjecture to determine Eyman's ability to perform work-related

activities. I disagree.

As an initial matter, I note that the ALJ did not entirely reject Dr. Katyal's opinions as Eyman claims. Indeed, the ALJ stated that she relied on Dr. Katyal's opinions in restricting Eyman to less than a full range of sedentary work (Tr. 22), and a review of the RFC shows it to contain significant limitations consistent with some of Dr. Katyal's findings. This shows that the ALJ gave some credit to Dr. Katyal's opinions. *See Ellis,* 392 F.3d at 994.

Further, according limited weight to opinion evidence does not necessarily render the record devoid of substantial evidence upon which an ALJ can base her decision. The limitation of *opinion* evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007); *see also Zeiler v. Barnhart,* 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel,* 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support ALJ's decision).

A review of the record here shows that there was substantial medical and other evidence in the record upon which the ALJ could base her decision, even with

the minimal weight accorded to the treating provider's opinion. This evidence includes contemporaneous treatment notes made during the relevant period by Eyman's health providers that recorded normal physical examinations, no complaints of weakness or fatigue, intermittent episodes of dizziness helped by medication, Eyman's reports of being able to engage in routine activities, and observations that Eyman was limited only in her ability to engage in "vigorous" or "strenuous" activities.

As detailed by the ALJ throughout her decision, there was sufficient medical and other evidence of record supporting her conclusion that Eyman had the RFC to perform sedentary work with additional and significant restrictions. Accordingly, it cannot be said that the ALJ's decision is not supported by substantial evidence on the record as a whole. I cannot reverse the decision even if substantial evidence may support a different outcome. *Cox,* 495 F.3d at 619 (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

E.   Obesity

To the extent Eyman claims that the RFC failed to include her symptoms of obesity, such as shortness of breath, an ALJ is not required to attribute specific RFC limitations to a specific impairment. *Cross v. Berryhill*, No. 4:16-CV-00679-NKL, 2017 WL 465473, at *7 (W.D. Mo. Feb. 3, 2017) (citing *Myers v. Colvin*, 721 F.3d

521, 526-27 (8th Cir. 2013); *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012)). Nevertheless, the ALJ addressed Eyman's obesity in her written decision, including Eyman's 2015 complaints of and evaluations for obesity-related shortness of breath (*see* Tr. 21), as well as Eyman's measured body mass index that was indicative of morbid obesity. (*Id.* at n.1.) Upon consideration of this and other evidence of record, the ALJ's RFC assessment limited Eyman to sedentary work, which by definition involves lifting no more than ten pounds and only occasional walking and standing. 20 C.F.R. § 404.1567(a). And the ALJ imposed additional limitations that Eyman could not climb ladders, ropes, or scaffolds; could not crouch or crawl; could only occasionally climb ramps and stairs; could only occasionally balance, stoop, and kneel; and may need to use a cane while ambulating. This RFC adequately takes into account the effect of Eyman's obesity. *See Cunningham v. Colvin*, No. 1:15 CV 117 ACL, 2016 WL 5371571, at *8 (E.D. Mo. Sept. 26, 2016).

Because the ALJ's evaluation process referenced Eyman's obesity and obesity-related shortness of breath, and the RFC included significant exertional and postural limitations, the ALJ's failure to include Eyman's specific obesity-related symptom in the RFC is not reversible error. *See Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir. 2009) ("[W]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal.").

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, I may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims raised on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Eyman was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Maureen A. Eyman's complaint is dismissed with

prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2020.